**FILED**
**AUG 2 8 2006**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR 05-30097 (01) |
| Plaintiff, | \* | |
| -vs- | \* | ORDER AND OPINION |
| DARRELL CLOWN, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The defendant filed a motion to suppress statements (Doc. 25). United States Magistrate Judge Moreno conducted evidentiary hearings on March 24 and July 19, 2006. I have conducted a *de novo* review of the transcript of the hearings (Doc. 58). I have examined the exhibits (see Doc. 48) received at the hearings. The magistrate issued a report and recommendation (Doc. 57). I have read the transcript of the bench decision and report and recommendations (Doc. 62). I have considered the objections (Doc. 73) filed by the government and all other records in this case.

I fail to understand why the defendant would seek to suppress his statements of May 20, 2004, August 30, 2004, and May 11, 2005. They are all exculpatory. Of course, any agreement by the defendant to participate in a polygraph session would not be admissible at trial since the polygraph examination and the claimed results are not admissible. In any event, the statements will not be suppressed and it remains to be seen whether any exculpatory statements will be admissible at trial.

The real issue deals with the claimed statements of the defendant on August 11, 2005, following the completion of the polygraph testing. Such statements were obtained in violation of the Fifth Amendment rights of the defendant after he had clearly stated that he would not make any further statements, at least to SA Kenser, who was the only government agent then in the room with the defendant. I agree that the defendant's freedom to depart was sufficiently restricted to place him in custody. I agree with the other findings by the magistrate. The interviewing agents did not scrupulously honor the

constitutional right of the defendant to "cut off" questioning. Instead, one agent "handed off" the defendant to another agent in an effort to continue questioning. I find it significant that the defendant was never advised prior to or during the polygraph examination that he was free to leave at any time, that he was not considered under arrest, and that he would not be arrested at the conclusion of the testing and interview.

I will address the objections of the defendant in some detail. The government asserts that the magistrate relied "heavily" on the fact that the defendant was Mirandized by Agent Kenser, thus suggesting a custodial situation. I doubt that the government knows what went through the mind of the magistrate. The magistrate obviously took into account the fact that, objectively, suspects who are informed of their Miranda rights by a law enforcement officer reasonably believe that they are going to be interrogated in a custodial setting. Why else would they be given Miranda warnings? On pages 3 and 4 of the objections, the government provides the factual backdrop for the August 11, 2005, statements. What is glossed over, however, are the facts that defendant was never Mirandized on any of the prior occasions when he was interviewed by SA Wipperfurth. It is significant when a law enforcement officer from the F.B.I. interviews a suspect on three occasions, without Mirandizing the suspect, and then on the fourth occasion, when the suspect is interviewed at the police station, he is Mirandized. These facts weight in favor of an objective finding of custody. Indeed, a reasonable suspect standing in defendant's shoes would have believed that he was in custody on August 11, 2005, simply because he was Mirandized on this occasion and not on the three prior occasions when he was questioned by an FBI agent.

The government cites United States v. Black Bear, 422 F.3d 658 (8th Cir. 2005), to support the proposition that it is "customary" for a suspect to be advised of his Miranda rights prior to the conducting of a polygraph examination, whether they are in custody or not. Black Bear does not stand for this proposition. The fact that it is the F.B.I.'s "policy" to Mirandize suspects before polygraphing them does not bind this court to anything.

The government attempts to downplay the fact that defendant was never advised that he was not under arrest. The assurances that a suspect is not under arrest and will not be arrested at the conclusion of the interview are very important ones that defendant, in this instance, was never given.

On page 5 of the objections, the government blurs the sequence of events that the magistrate found to be important to a finding of custody. The magistrate found, and I find that the record supports, that defendant was hooked up to the polygraph equipment and therefore "restrained" until SA Kenser returned to the room and advised defendant that he had failed the polygraph examination. This finding was based on the facts and the magistrate's credibility determination relating to SA Kenser. The magistrate found that, within a few short minutes after defendant was unhooked from the equipment, Kenser began raising his voice and accusing defendant of being a liar and having had sex with a child. Thus, right on the heels of being unhooked, defendant was confronted, in a loud and accusatory manner, by Kenser. It was when this happened that defendant asserted his right to remain silent and to terminate the interview. I did not hear the testimony or see the witnesses. The magistrate is entitled to make observations and judgments about witness credibility. It is obvious that he did just that. Within seconds after Kenser left the room, SA Trone entered. Defendant certainly had no time to walk out of the room or leave because Trone entered literally on the heels of Kenser's departure. We know, of course that the interview occurred in a closed door room of the police department and in a hostile setting.

The government seeks to focus more on the fact that defendant agreed to talk to SA Trone, gave a partial confession, and was then allowed to leave. The question, however, is whether defendant was in custody <u>at the time he invoked his right to remain silent and to terminate the interview</u>. If he was, that right should have been honored and he should not have been questioned without a substantial amount of time elapsing and without being given fresh Miranda warnings, also making sure that he understand that he was not in custody, could end the interview at any time, and that he would not be arrested at the conclusion of the interview.

Again, it is obvious that the decision of the magistrate focused in large part on credibility grounds. The magistrate thought that SA Kenser was "hedging" in his testimony. The magistrate rejected some of the testimony of SA Kenser. The credibility aspect was an important ingredient of the magistrate's decision, particularly on the custody issue. I am not free to interfere with such assessments and would not do so.

The government asks this court to view the "scrupulously honored" inquiry from SA Kenser's perspective only. The argument is that SA Kenser immediately ceased his questioning of defendant and exited the interview room when defendant invoked his Fifth Amendment rights.

3

The problem, however, for the government is that the "scrupulously honored" requirement applies to SA Trone as well and it is undisputed that SA Trone did not "scrupulously honor" defendant's Fifth Amendment invocation.

The government argues that defendant's invocation was either ambiguous or limited only to SA Kenser. Stated another way, the government claims that defendant only said that he did not want to talk to SA Kenser and said nothing about not wanting to talk to some other F.B.I. agent. The magistrate who heard the evidence did not interpret the defendant's statements in the manner urged by the government. The magistrate obviously found that the defendant told the only law enforcement officer in the room that he did not want to talk anymore. The magistrate did not view the invocation as being limited or equivocal, but rather a clear statement by defendant that he wanted the interview to cease. The fact that SA Trone "talked him out of it" does not cut it.

The government claims on page 8 of the objections that the magistrate's decision is in conflict with Black Bear. Black Bear, however, is distinguishable and did not involve the Michigan v. Mosley issue that this case does. In Black Bear, the defendant never invoked his Fifth Amendment rights and refused to talk to the interviewing agent.

The motion should be granted as to statements made by the defendant following the completion of the polygraph testing. In all other matters, the motion should be denied. The report and recommendations should be adopted and the objections of the government overruled.

The request of the government for this court to remand this matter to the magistrate for a finding as to whether the statements were voluntarily made should be denied. There is nothing to indicate that the statements were not voluntarily made. Thus, if the defendant testifies at trial and becomes subject to impeachment (i.e. testifies on his own behalf contrary to what he told SA Trone), his statements to SA Trone would be admissible under Harris v. New York, 401 U.S. 222 (1971).

Now, therefore,

IT IS ORDERED, as follows:

1) The motion to suppress (Doc. 25) is granted in part and denied in part, as explained above.

2) The report and recommendations (Doc. 57) and the findings by the magistrate (Doc. 62) are adopted and approved.

3) The objections (Doc. 73) filed by the government are overruled.

Dated this 28th day of August, 2006.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                DEPUTY
(SEAL)